# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LISA MICHELLE JAMES, | CASE NO. 4:16-cv-00543-GBC |
| Plaintiff, | |
| v. | (MAGISTRATE JUDGE COHN) |
| NANCY A. BERRYHILL,[1] <br> Acting Commissioner of Social Security, | OPINION AND ORDER TO GRANT PLAINTIFF'S APPEAL AND TO REVERSE AND REMAND DECISION OF COMMISSIONER |
| Defendant. | |

## OPINION AND ORDER TO GRANT PLAINTIFF'S APPEAL AND TO REVERSE AND REMAND DECISION OF COMMISSIONER

This matter is before the undersigned United States Magistrate Judge for decision. Lisa Michelle James ("Plaintiff") seeks judicial review of the Commissioner of the Social Security Administration's decision finding of not disabled. As set forth below, the Court **GRANTS** Plaintiff's appeal and **REVERSES** and **REMANDS** the Commissioner's decision in this case.

### I. STANDARD OF REVIEW

To receive disability or supplemental security benefits under the Social Security Act ("Act"), a claimant bears the burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A).

The Act further provides that an individual:

---

[1] Effective January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Commissioner Berryhill is automatically substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Plaintiff must demonstrate the physical or mental impairment "by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750. The claimant bears the burden of proof at steps one through four. See Wells v. Colvin, 727 F.3d 1061, 1064 at n.1. (10th Cir. 2013). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's ("ALJ's")] findings in order to determine if the substantiality test has been met." Id. The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## II. BACKGROUND

**A.     Procedural History**

Pursuant to 42 U.S.C. § 405(g), this is an appeal from a final administrative decision by an ALJ dated March 18, 2015 denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. (Tr. 13-23). At the time of that decision, Plaintiff was 57 years old (Tr. 10, 200), and she possessed a high school level education. (Tr. 34, 205). According to the ALJ and vocational expert ("VE"), she also possessed sedentary, skilled past relevant work as a customer service representative. (Tr. 22, 47). However, Plaintiff alleges she has been unable to do this or any other work since December 1, 2011, due to limitations imposed by a combination of mental and physical impairments, including depression and anxiety. (Tr. 13, 177-178, 181-186, 200, 204).

//

3

## III. ISSUES AND ANALYSIS

On appeal, Plaintiff alleges two errors: (1) The ALJ committed reversible legal error by failing to properly evaluate the medical opinion evidence; and (2) the ALJ's RFC assessment, and specifically its lack of any mental limitations, was not supported by substantial evidence. (Pl. Br. at 5, Doc. 18).

A. **ALJ's Evaluation of the Medical Evidence**

1. **Opinions in the Record**

Plaintiff contends the ALJ failed to properly evaluate the medical opinions in the record, specifically from the consultative psychologist, Timothy D. Doty, Psy.D., and the state agency psychologists, Edith King, Ph.D. and "SKT," Ph.D. (Pl. Br. at 6-9). In the decision, the ALJ reviewed Plaintiff's background before evaluating the medical evidence:

> The claimant has the following severe impairments: history of generalized arthralgia …
>
> The claimant's medically determinable physical impairments of hypertension, hypothyroidism, moderate obesity, history of cholecystectomy, and a history of renal failure, resolved, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental and physical work activities and are therefore non-severe …
>
> The claimant's medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore also non-severe.
>
> In making this finding, the [ALJ] has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments. These four broad functional areas are known as the "paragraph B" criteria.
>
> The first functional area is activities of daily living. In this area, the claimant has mild limitation. The claimant reported in her Adult Function report that she had no problems with personal grooming; she prepares simple meals, does some light cleaning, and can shop for groceries.

The next functional area is social functioning. In this area, the claimant has mild limitation. The claimant reported at her consultative examination that her uncle and her children are social support. She additionally reported she lives with a man whom she considered a friend. She also reported to a counselor that she had a good relationship with her mother. She had a brother and sister she did not see much but got along with. She "clashes" with her older daughter but get[s] along well with her other two children and her grandchildren. With respect to her interpersonal interaction, she had two friends and a few acquaintances but now does not like to be out in public or around many people. It was easy for her to make and maintain friendships if she liked the person and does not have a problem meeting new people.

The third functional area is concentration, persistence, or pace. In this area, the claimant has mild limitation. The claimant was noted at a mental status exam to be alert and oriented times three with no psychosis; her attention and concentration were average, her motor activity normal, her judgment and insight were average, her memory normal, and her attention and concentration were normal.

The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration. The claimant has no inpatient mental health treatment of two or more weeks …

At the hearing, the claimant testified as follows:

She is 57 years old. She lives in an apartment with a roommate who is a good friend. She has no income. To get by, she sold all her stock and gave it to her friend so he would not be supporting her. She also gets food stamps.

She stopped working because of her depression and anxiety. She had ulcers and was in the hospital. She has arthritis and could not type. She can pick something up but cannot grip it because of too much pain in her index finger. She can lift a gallon of milk but sets it back down quickly. She cannot lift a case of Coke.

She has arthritis in her right knee and her right foot is deformed because of it. If she walks 15 minutes, her right hip and knee start hurting. If she sits for an hour, she will be really hurting and will have a hard time getting up.

She vacuums her bedroom and cleans the toilet and sink. She uses a long brush to clean the toilet. She cannot do the tub because of her knee.

She was taken off some medications because of her kidney failure. Now she takes Cymbalta, Wellbutrin, Norvasc, Clonidine, Ambien, fish oil, Flexeril, and Nexium. They took her off Lisinopril and Celebrex.

She does some grocery shopping. There have been times she has left her cart in the check-out lane and left the store if she goes when there are crowds. She

goes to church when she goes home to Morris, OK. She used to bowl but not anymore. She does not do much with her grandkids but they are out of town.

She spends her day watching television. She does not have a driver's license. She had panic attacks when she drove but her license had been suspended for not having insurance and she had never gotten it back.

She had worked as an advance technician for the Dish Network from 2006 until December 2011. She would help the guys in the field, did billing, and handled the main calls. She used a computer and headset. She would type all day, answer questions, and talk on the phone. She was on the FMLA, and it ran out while she was in the hospital. She was there for depression, anxiety, hiatal hernia, and ulcers …

The [ALJ] finds that the claimant is not fully credible because she testified she could lift a gallon of milk but not hold it for long; she could stand or / walk only 15 minutes; could sit an hour but would really be hurting and she has to take a shower because she could not get out of the tub due to a problem with her right leg. However, the record suggests these complaints are greatly exaggerated. On July 22, 2011, she reported no joint pain and swelling although she was on Celebrex for chronic arthritis. On the exam, her extremities were all normal. Her range of motion was normal. On August 12, 2011, the review of systems was negative for any complaint of bone / joint symptoms and weakness. On January 12, 2012, she denied acute muscle, bon[e] or joint pain. On March 18, 2013, at her consultative examination, she described no arthritis or pain with her hands and her thumb to finger opposition was normal. The range of motion of her extremities was equal throughout. On September 11, 2013, she reported a diagnosis for psoriatic arthritis and that she had daily neck, hand, foot, and knee pain but on the musculoskeletal exam, the only abnormality actually noted was right knee pain on palpitation. Thus, her testimony of extreme physical limitations is not supported by the record and suggests a tendency to exaggerate. This also strongly reduces the credibility of the mental conditions and limitations she has reported.

The claimant alleges a variety of ailments that prevent her from working. On July 31, 2011, she presented to the hospital with chronic, recurrent episodes of nausea and vomiting that turned to diarrhea; however, the etiology was unclear. On August 12, 2011, she reported vomiting and diarrhea to Danny Thomason, D.O., with her primary care clinic. The review of systems was negative for any complaint of bone or joint symptoms and weakness. On December 12, 2011, she presented to her primary care clinic gastroenterology department with a complaint of intermittent heartburn. The symptoms were pretty well controlled with medication. Her fine motor skills were normal. She was oriented to time, place, person, and situation. On January 7, 2012, she reported to the emergency room with vomiting. On the musculoskeletal exam, there was no extremity tenderness, full range of motion of all extremities. Her diagnosis was nausea and vomiting due to esophagitis and non-bleeding ulcer, substance abuse (benzodiazepine overdose), and anxiety. She was sneaking into her purse and getting Valium.

> On January 12, 2012, she was evaluated for reports of nausea, heartburn, and vomiting. She denied acute muscle, bon[e] or joint pain. She was alert and oriented times three but was tearful with at times some pressured speech. An exam on that date found no extremity tenderness and full range of motion in all extremities. On January 13, 2012, the doctor expressed concerns about poly-substance dependence as a source of the claimant's problems. An esophageal study on January 16, 2012, showed acute esophagitis.
>
> On December 14, 2012, the claimant described to her mental health counselor numerous physical ailments, including stomach ulcers. A physical consultative examination with Corey Babb, D.O., was held on March 18, 2013. The claimant's chief complaint was depression. She described no arthritis or pain with her hands. Her thumb to finger opposition was normal and the range of motion of her extremities was equal throughout. The neurologic exam was normal and she was alert and oriented times three, her mood was congruent and her affect normal, and her thought process was non-tangential.
>
> On September 11, 2013, she presented to a health clinic to establish care for hypertension and cholesterol. The claimant reported a diagnosis for psoriatic arthritis and that she had daily neck, hand, foot, and knee pain. On the musculoskeletal exam, the only abnormality actually noted by Anna Pina, APRN, was right knee pain on palpation. Nevertheless, the assessment included arthralgias in multiple sites and psoriatic arthropathy.
>
> On July 21, 2014, she was admitted to the hospital for concerns over her labs. It was suspected she had excessive diuresis. On the review of systems, she reported no joint pain or swelling, although she was on Celebrex for chronic arthritis. On the exam, her extremities were all normal. Her range of motion was normal. A renal ultrasound to rule out hydro nephrosis showed the right kidney smaller than the left but no hydro nephrosis (distention of the kidney usually caused by a failure of free flow of urine in the kidney). On discharge, on July 22, 2014, she was advised to slowly increase activity as tolerated. It was not indicated she would have any permanent limitations.
>
> On examination by Jessica Brewer, APRN, at her primary care clinic on August 4, 2014, mentioned arthralgias in multiple sites, but nothing in the exams detailed any of these sites.

(Tr. 15-20). Following this review of Plaintiff's impairments and the medical evidence, the ALJ found Plaintiff had the RFC to perform medium work. (Tr. 17). The ALJ stated he formulated the RFC from consideration of all of the evidence.

//

#### a. Dr. Doty (Consultative Examining Physician)

Plaintiff contends the ALJ failed to properly evaluate the opinion of Dr. Doty. (Pl. Br. at 6). The ALJ summarized the opinion of Dr. Doty:

> The [ALJ] does not give the opinion of Philip Doty, Ph.D., the mental consultative examiner, much weight because it exceeds what is reasonable from the actual results of his mental status exams. At her mental consultative examination on May 20, 2013, the claimant reported her uncle and her children were her social support. She lived with a man she considered a friend. She was oriented to time, person, place, and purpose. She made calculation errors on serial 7s and forgot 2 of the 3 recall items. However, her fund of knowledge was average, her associations relevant, her memory and concentration appeared intact, her insight and reality testing were moderate, and her mood was anxious. Based upon this, the diagnosis was mood disorder and anxiety with a GAF of only 48. Dr. Doty concluded her ability to engage in work-related mental activities appeared moderate and her ability to undertake mental tasks appeared unproblematic. Her ability to sustain concentration in a real-world work situation appeared hindered and her ability to socially interact and adapt to the demands of a work situation appeared poor to moderate.
>
> It is difficult to understand how this examiner came to his conclusions. A GAF (global assessment of functioning) between 41 and 50 is defined as serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting or any serious impairment in social, occupational, or school functioning (e.g. no friends or unable to keep a job). The only criteria that claimant meets here is her inability to keep a job based upon her own report. But none of the minimal objective testing performed by the examiner would seem to suggest such extreme limitations. The only real problems she demonstrated were on serial 7s and recall, and it might be noted these are extremely subjective tests. On the other hand, she had social support from her uncle and children and lived with a man she considered a friend. Her fund of knowledge was average, her associations relevant, her memory and concentration appeared intact, [and] her insight and reality testing were moderate. It is simply not clear to the [ALJ] how such a relatively average presentation translates into such an extreme inability to do work activities.

(Tr. 21-22). Plaintiff contends the ALJ erred in assuming the basis for Dr. Doty's GAF score finding while at the same time failing to mention the doctor's references to Plaintiff's longstanding depression, panic attacks, and hypomanic appearing mood swings with an inconsistent work pattern including having been fired from her last job for excessive absences. (Pl. Br. at 7-8). Plaintiff also stated Dr. Doty's opinions (as a government selected mental health specialist) were

8

generally consistent with those rendered by state agency psychologists Drs. King and SKT, who found Plaintiff to have limitations in work related persistence and social interaction. (Pl. Br. at 7, 9) (citing Tr. 21, 59, 87, 332). The ALJ's rationale of "not understanding" Dr. Doty's assessment of the GAF score, alleged minimal objective testing; and rejection of the alleged subjective reports by Plaintiff were insufficient to reject Dr. Doty's findings of mental limitations. (Tr. 22). The Court notes the ALJ did not cite a report from any other psychologist to contradict the findings of Dr. Doty. Substantial evidence does not support the ALJ's finding to reject Dr. Doty's opinion regarding Plaintiff's alleged mental limitations.

### b. Drs. Edith King and SKT (State Agency Reviewing Psychologists)

Plaintiff contends the ALJ failed to properly evaluate the opinion of Drs. Edith King, PhD, and SKT, PhD. (Pl. Br. at 9). The ALJ summarized the opinion of Drs. Edith King and SKT:

> The State agency psychological assessments of Edith King, Ph.D., and SKT, Ph.D., are given little weight as they found the claimant to have a severe mental impairment. The [ALJ] does not agree that the claimant has a severe mental impairment. Although she has been diagnosed with depression and anxiety, her actual mental status exams have shown very little in the way of any actual limitation to do work-like activities as a result. It is also of significance in this connection that she appears to exaggerate her symptoms as discussed above. On December 13, 2011, she was oriented to time, place, person, and situation. On March 18, 2013, at her consultative examination, she was alert and oriented times three and her mood was congruent, her affect normal, and her thought process non-tangential. Her mental status exam on September 13, 2012, showed the claimant was alert and oriented times three, had adequate hygiene, her mood was good and affect reactive, her attention and concentration adequate, motor activity was normal, and her judgment and insight were average … Family and Children's Services records contain a great many self-reports of depression and anxiety but the actual mental status exams (which measure her ability to function in some objective way) all show very little in the way of problems. On May 1, 2014, the claimant reported her mood consistently sad and down; her motivation was poor. She also reported anxiety in public and had begun to shop at less crowded times. On the mental status exam, she was alert and oriented times three and well-groomed with adequate hygiene. She had no psychosis, her attention and concentration were average, her motor activity normal, her judgment and insight average, her memory normal, her attention and concentration normal, but her mood was "depressed."

(Tr. 21). Plaintiff contends while Drs. King and SKT found Plaintiff to be moderately impaired in working at tasks and understanding instructions, they ultimately deemed her able to perform simple work tasks with routine supervision, with moderate difficulties sustaining and persisting at tasks on a full-time work schedule (eight hours a day and 40 hours a week), and with restrictions from dealing with the general public. (Pl. Br. at 10) (citing Tr. 58-59, 86-87). The ALJ rejected their opinions due to Plaintiff's exaggeration of symptoms and in other exams, she was "oriented to time, place, person, and situation" and "oriented times three." (Tr. 21). As Plaintiff notes, credibility judgments are not a proper basis for rejecting a medical opinion. (Pl. Br. at 10) (citing McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002) and Sagi v. Colvin, 2016 WL 1267170, at *3 (N.D. Okla. 2016) (unpublished).[2] As McGoffin states:

> In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). Although we may not second-guess an ALJ's credibility judgments, such judgment by themselves "do not carry the day and override the medical opinion of a treating physician that is supported by the record." Id. at 318.

McGoffin, 288 F.3d at 1252. Thus, the ALJ needed to cite an alternative medical opinion to refute the state agency psychologists, rather than discounting Plaintiff's credibility. Moreover, citing boilerplate language from medical reports noting Plaintiff was "oriented times three" is insufficient to refute the opinions of two psychologists. A District Court in New Mexico recently rejected the ALJ's reliance on such an analysis:

> Applying factor (3), the ALJ noted that Dr. Loescher's finding that [the plaintiff] had two severe limitations was contradicted by other findings in her opinion—specifically, that "the claimant was alert and oriented to time, place, and person with articulate and clear speech and she did not describe symptoms associated with dissociative disorder such as loss of time, depersonalization, or de-realization nor

---

[2] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

psychotic symptoms such as auditory or visual hallucinations." And applying factor (6), the ALJ noted that Dr. Loescher "relied a great deal on the claimant's statements…"

> Regarding factor (3), Dr. Loescher's opinion does not contain the supposed internal contradictions the ALJ cites. Compare the following: Dr. Loescher noted that Davis would be "severely impaired in her ability to understand, remember and follow through on basic work instructions" and "severely impaired in her ability to manage stress in the workplace and to interact with coworkers and the general public"—which are limitations related solely to the workplace—while the supposed internal contradiction is that [the plaintiff] had an alert mental state and lack of disassociative issues—which are broader findings that do not preclude the more specific workplace limitations. Stated more simply, [the plaintiff] can be mentally oriented and free of hallucinations yet still have severe limitations in her ability to follow workplace instructions and interact with others.

Davis v. Berryhill, No. 15-CV-309-JCH-WPL, 2017 WL 3328181, at *3-4 (D. N.M. Aug. 3, 2017), report and recommendation adopted, No. 15-CV-309-JCH-WPL, 2017 WL 3773072 (D. N.M. Aug. 29, 2017). Thus, substantial evidence does not support the ALJ's finding to reject Drs. King and SKT's opinions regarding Plaintiff's alleged mental limitations.

**B.     Other Allegations of Error**

Plaintiff's additional claims of error, including the resulting RFC assessment with any mental limitations, may be remedied through the case's treatment on remand. Thus, the Court declines to address those claims. Accord Williams v. Colvin, No. CIV-13-448-R, 2014 WL 2949470, at *4 (W.D. Okla. June 27, 2014). See, e.g., Wade v. Astrue, 268 F. App'x 704, 706–07 (10th Cir. 2008).

Accordingly, the ALJ's decision lacks substantial evidence a reasonable mind might accept as adequate to support the conclusion.

**CONCLUSION**

For the reasons set forth above, the Court **GRANTS** Plaintiff's appeal and **REVERSES** and **REMANDS** the Commissioner's decision in this case.

SO ORDERED on March 26, 2018.

                                                                                     Gerald B. Cohn
                                                      United States Magistrate Judge